FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

97 SEP 30  PM 3: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

TIMOTHY D. COCHRAN,        }
                           }

    Plaintiff,              }
                           }

v.                           }     CASE NO. CV 97-B-0163-S
                           }

BROOKWOOD HEALTH         }
SERVICES, INC., et al.,      }
                           }

    Defendants.           }

ENTERED

SEP 3 0 1997,

### MEMORANDUM OPINION

Currently before the court is defendant Brookwood Health Services, Inc.'s

("Brookwood") Motion Under the United States Arbitration Act to Stay the Action Pending

Arbitration, or Alternatively, to Dismiss ("Alternative Motion to Dismiss") and plaintiff

Timothy D. Cochran's ("Cochran") Motion to Stay Arbitration.  Cochran, an African

American, filed the present action on January 23, 1997, alleging, *inter alia*, race

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended.  Brookwood seeks a stay of the present proceedings pursuant to the Federal

Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15 (1994).  Brookwood contends that Cochran had

agreed to submit all disputes arising out of his employment with Brookwood (including his

Title VII claims) to final and binding arbitration.  Cochran counters that he never agreed to

arbitrate his disputes with Brookwood.  Upon careful consideration of the record, the

submissions of the parties, the argument of counsel, and the relevant law, the court is of the

opinion that Brookwood's Alternative Motion to Dismiss is due to be granted and Cochran's

Motion to Stay Arbitration is due to be denied. This action will be dismissed without prejudice pursuant to an Order entered contemporaneously herewith.

## I. FACTUAL SUMMARY

Plaintiff Cochran, an African American, has been employed by defendant Brookwood as a surgical assistant since 1993. Cochran Aff. at 1. According to Patsy Burrell, Consulting Leader for Brookwood's Human Resources department, Brookwood published an employee handbook in January 1993 that contained the terms of its employment dispute resolution process, the "Fair Treatment Process" ("FTP"). 2d Burrell Aff. at 1. The FTP is a five-step process that uses intra-company mechanisms in the first four steps to resolve disputes. *See* 2d Burrell Aff., Attach. A. Arbitration constitutes the fifth and final step of the FTP: "If you still believe your complaint has merit, you will use binding, independent arbitration as the final step in your complaint process." *Id.* The handbook explains:

> As a condition of new employment and continued employment, you agree (whether manager or not) to accept the Fair Treatment Process as *the sole and exclusive remedy* for any employment-related complaint that may occur as a result of your employment or termination from [Brookwood]. The arbitration will be enforceable in any court of law.

*Id.* (emphasis added).

On October 25, 1993, Cochran signed a form acknowledging his receipt of the 1993 employee handbook. 2d Burrell Aff. at 1, Attach. B; Cochran Aff. at 1. This Acknowledgment Form appears to be "Page 31" of the January 1993 handbook. 2d Burrell Aff., Attach. B. The form itself makes no mention of "arbitration." *See id.* The form also

2

explains that the handbook is designed only to provide "a working knowledge of

[Brookwood's] philosophy and general policies," and contains the following disclaimer:

> No written agreement concerning employment terms or conditions is valid
> unless signed by a facility executive director, and senior officer of
> [Brookwood], and *no written statement or agreement in this handbook
> concerning employment is binding*, since provisions are subject to change, and
> as all [Brookwood] employees are employed on an "at will" basis. No verbal
> agreement may be made regarding employment and benefit policies. No written
> agreement regarding employment will be honored unless approved in writing by
> Executive Director and above. Circumstances will obviously require that the
> policies, practices, and benefits described in the handbook change from time to
> time. The company reserves the right to amend, supplement, or rescind any
> provisions of this handbook as it deems appropriate in its sold [sic] and absolute
> discretion.

*Id.* (emphasis added). The 1993 form also states that "it is my responsibility to familiarize

myself with the information in this [handbook] and I understand that it contains the general

human resources policies of the company." *Id.* (underscore in original).

Brookwood claims that it distributed a new handbook to employees in March 1996. *Id.*

at 2. As with the 1993 handbook, the 1996 handbook contains the same five-step FTP. *Id.* at

Attach. C (1996 handbook). The 1996 handbook does include more detail about the

arbitration process and the FTP's "Application and Coverage":

> The FTP applies to all employees . . . and covers all disputes relating or arising
> out of an employee's employment with the company or the termination of
> employment. The only disputes or claims not covered by the FTP are those
> listed in the "Exclusions and Restrictions" section below. Examples of the type
> of disputes or claims covered by the FTP include claims for wrongful
> termination, breach of contract, harassment or retaliation under . . . Title VII of
> the Civil Rights Act of 1964 . . . . *Your decision to accept employment or to
> continue employment with the company constitutes your agreement to be bound
> by the FTP. Likewise the company agrees to be bound by the FTP.* This mutual
> agreement to arbitrate claims means that both you and the company are bound to
> use the FTP as the only means of resolving employment-related disputes and to
> forego any right either may have to a jury trial on issues covered by the FTP.

3

> However, no remedies that otherwise would be available to you or the company
> in a court of law will be forfeited by virtue of the agreement to use and be
> bound by the FTP.

*Id.* (italics in original). In 1996, Cochran signed a form acknowledging receipt of the 1996
handbook. *Id.* at 2. Brookwood claims that the original has been misplaced and cannot
produce a copy of this form with Cochran's signature. *Id.*

Cochran admits to signing an acknowledgment form in 1996 that was "similar" to the
1993 form but does not recall seeing the word "arbitrate" anywhere in the form that he signed
in 1996. Cochran Aff. at 1. He maintains that he registered complaints of discriminatory
treatment with several members of Brookwood's management and administrative staff. *Id.* at
2. He asserts that no one ever mentioned arbitration or the FTP in response to these
complaints. *Id.* He claims that Brookwood eventually asked him to make a sworn statement
without an attorney and without mention of the FTP. *Id.*

On January 23, 1997, Cochran filed his Complaint in the present action. Seven days
later, a member of Brookwood's Human Resources department allegedly called him out of the
operating room to sign an acknowledgment form, telling him that Brookwood needed a record
of his receipt of the 1996 handbook and that "there was 'nothing to it.'" *Id.* at 1. Cochran
asserts that he did not know the meaning of "arbitration" at the time and that he was not told
that signing the form signified his understanding and acceptance of Brookwood's arbitration
process. *Id.* at 1-2.

Brookwood has produced a copy of the 1997 form bearing Cochran's signature and the
following handwritten notation: "The original was signed March of 1996." 2d Burrell Aff.,
Attach. D. Burrell attests that the 1997 form is identical to the form that Cochran and all

4

other Brookwood employees signed in 1996. *Id.* at 2. The 1997 form (and, allegedly, the

1996 form) acknowledges Cochran's receipt of the 1996 handbook and his agreement to "read,

understand, familiarize [himself] with and comply with the policies contained in [the

handbook]." *Id.* at Attach D. The 1997 form also contains the following language with

respect to arbitration:

> I also understand that the company may change, rescind or add to any of the
> policies, benefits or practices described in the Employee Handbook, *except the
> employment-at-will policy and the Mutual Agreement to arbitrate* . . . .
>     Furthermore, I understand, acknowledge and agree that the Employee
> Handbook is not a contract of employment, that my employment with the company is
> not for a specified term and that employment with the company is at the mutual consent
> of the employee and the company. Therefore, I hereby acknowledge that either I or the
> company can terminate my employment relationship at will, with or without cause or
> notice.
>     . . . I hereby voluntarily agree to use the Company's Fair Treatment Process
> and to submit to final and binding arbitration any and all claims and disputes that are
> related in any way to my employment or the termination of my employment with
> [Brookwood]. *I understand that final and binding arbitration will be the sole and
> exclusive remedy for any such claim or dispute against [Brookwood]* . . . , *and that, by
> agreeing to use arbitration to resolve my dispute, both the Company and I agree to
> forego any right we each may have had to a jury trial on issues covered by the Fair
> Treatment Process* . . . .

*Id.* at Attach. D. (emphases added). The form concludes, "I further acknowledge that this

mutual agreement to arbitrate may not be modified or rescinded except by a writing signed by

both me and the Company." *Id.*

## II. DISCUSSION

The Supreme Court has held that the legislative impetus for the FAA was to place

arbitration provisions "'upon the same footing as other contracts.'" *Doctor's Assocs., Inc. v.*

5

*Casarotto*, __ U.S. __, __, 116 S.Ct. 1652, 1656 (1995) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).  Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Section 3 of the FAA provides for a stay of judicial proceedings while the

parties have an opportunity to arbitrate a dispute referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Brookwood seeks a stay of the present action pursuant to § 3.  Cochran

responds with the following arguments in favor of a stay of arbitration: (1) Brookwood

fraudulently induced Cochran to sign an arbitration agreement in 1997, Pl.'s Mot. ¶ 1; (2)

Brookwood has provided no other proof that an arbitration agreement exists, *id.* at ¶ 2; (3) the

FAA exempts employment contracts from its scope, *id.* at ¶ 3; (4) Brookwood has waived its

right to arbitration, *id.* at ¶ 4; (5) the FTP is ambiguous and should be construed against

Brookwood, *id.* at ¶ 5; and (6) the FTP is void against public policy, ¶ 6.  The court finds that

a valid arbitration agreement, which encompasses Cochran's complaints, does exist.

6

Therefore, the court is of the opinion that Cochran's motion is due to be denied and Brookwood's Alternative Motion to Dismiss is due to be granted.

### A.    Proper Forum

As an initial matter, Brookwood contends that "[i]n the event that this Court should decide that the only relevant Acknowledgment Form is the one executed in 1997 and that it may have been obtained by fraud, . . . this is an issue to be resolved by the arbitrator. Def.'s Resp. at 3. The Supreme Court has held that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court not the arbitrator." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986). Having considered the matter, the court finds that it is the proper forum in which this issue should be decided.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), the Supreme Court held:

> [I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* at 403-04. The present case meets the requirements of *Prima Paint* because the parties are in dispute as to the existence of an arbitration agreement, thus placing the "making" of the arbitration agreement in dispute. The Eleventh Circuit has indicated that, although most arbitration cases involve circumstances where parties have admitted to signing a contract containing an arbitration provision, the "calculus changes" when a party is "challenging the very existence of any agreement, including the existence of an agreement to arbitrate":

7

Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the [FAA]. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

*Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992).[1]  Brookwood and Cochran dispute whether they ever agreed to arbitrate their disputes. Because "the very existence of any agreement" is at issue, determining the existence of an agreement must be addressed first. Therefore, the court concludes that it is the proper forum for adjudicating the issue of whether the parties had ever agreed to arbitrate their disputes.

### B.     Existence of an Arbitration Agreement

Cochran's first two arguments in opposition to Brookwood's motion actually address the same issue: whether a valid agreement to arbitrate exists between himself and Brookwood. Thus, the court will address these issues together.

It is well-established that the FAA represents a federal policy that strongly favors enforcement of arbitration agreements. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). However, this policy is irrelevant in the absence of a valid agreement. As the Eleventh Circuit has explained, a "duty to arbitrate does not arise because a court thinks it is a good thing to require in the circumstances or because national labor policy

---

[1]     In *Chastain*, it was undisputed that the parties had not signed a contract with an arbitration agreement. *Id.* Despite the difference in facts from the present case (where one party alleges and the other party denies such a contract exists), *Chastain* remains instructive because "the very existence of any agreement" is at issue as long as one party denies it exists.

favors it. A party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate." *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1567 (11th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasizing that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration").

In ruling on a motion for a stay of judicial proceedings, the court must first determine whether a written agreement exists before deciding whether the issues raised by the dispute are within the scope of the agreement. 9 U.S.C. § 2. *See In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir.1993). The Supreme Court has interpreted § 2 of the FAA to allow application of state law "'*if* that [state] law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Casarotto*, __ U.S. at __, 116 S.Ct. at 1656 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). Under Alabama contract law, Brookwood bears the burden of proving the existence of an arbitration agreement because the party seeking to enforce a contract bears the burden of proving its existence. *Jim Burke Automotive, Inc. v. Beavers*, 674 So.2d 1260, 1265 (Ala. 1995).

In the present case, Brookwood alleges that a valid agreement to arbitrate all employment disputes between itself and Cochran has existed since the beginning of Cochran's employment. Def.'s Mot. ¶ 2. Brookwood maintains that Cochran's receipt of the 1993 and 1996 handbooks (which contained descriptions of the FTP) and signing of acknowledgment forms in 1993, 1996, and 1997 demonstrate his agreement to arbitrate. After examining each

9

instance where Cochran "agreed" to arbitrate, the court finds that Brookwood and Cochran have agreed to arbitrate their disputes since March 1996.

### 1.    1993 Handbook & Acknowledgment Form

The uncontroverted evidence shows that Cochran received a copy of the 1993 employee handbook and signed a form acknowledging his receipt of the handbook on October 25, 1993. 2d Burrell Aff., Attach. B. Brookwood argues that Cochran's receipt of the handbook and signing of the acknowledgment form in 1993 constitute a written arbitration agreement within the scope of the FAA. Def.'s Mot. ¶ 3. The court disagrees and finds no such contract between Brookwood and Cochran in 1993.

A contract is generally valid and enforceable if made voluntarily and fairly between competent parties. *Puckett, Taul & Underwood, Inc. v. Schreiber Corp., Inc.*, 551 So.2d 979, 983 (Ala. 1989). By extension, parties contracting to arbitrate must knowingly and voluntarily agree to do so. *See Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994), *cert. denied*, __ U.S. __, 116 S.Ct. 61 (1995) (holding that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration"). *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (noting that plaintiff's status as an "experienced businessman" indicates his agreement was not the product of coercion or fraud).[2] The Eleventh Circuit

---

[2]       The Fourth Circuit opinion affirmed in *Gilmer* had noted that "prospective waivers must be examined to determine whether they were knowing and voluntary." *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 200 (4th Cir. 1990) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)), *aff'd*, 500 U.S. 20 (1991).

10

recently emphasized that a mandatory arbitration clause does not bar litigation of a federal

statutory claim unless "the employee [has] agreed individually to the contract containing the

arbitration clause." *Brisenstine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526 (11th

Cir. 1997). *Brisenstine,* which concerned collective bargaining agreements, and other

Eleventh Circuit cases have not dealt with facts similar to the present case.

The Ninth Circuit, however, has specifically addressed whether employee handbooks

and acknowledgment forms may create agreements to arbitrate. *Nelson v. Cyprus Bagdad

Copper Corp.*, 119 F.3d 756 (9th Cir. 1997). The *Nelson* court held as follows:

> [T]he unilateral promulgation by an employer of arbitration provisions in an
> Employee Handbook does not constitute a "knowing agreement" on the part of
> an employee to waive a statutory remedy provided by a civil rights law. We
> conclude further that the right to a judicial forum is not waived even though the
> Handbook is furnished to the employee and the employee acknowledges its
> receipt and agrees to read and understand its contents. Finally, we hold that the
> right is not waived even when the employee performs his obligations by
> commencing or continuing to do his assigned work and accepting a paycheck in
> return.

*Id.* at 762. The facts concerning the 1993 handbook and acknowledgment form in the present

case virtually mirror the facts in *Nelson.* Although the handbook in *Nelson* states that the

"Open Door Policy and Complaint Resolution Policy described in this Handbook are the sole

and exclusive procedures" for resolving employment disputes, *id.* at 758, the court found that

"[n]othing in [the] acknowledgment notified Nelson either that the Handbook contained an

arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a

judicial forum . . . ." *Id.* at 761. In the present case, the 1993 acknowledgment form makes

no mention of an arbitration agreement and does not indicate that signing the form or receiving

the handbook constitutes an agreement to arbitrate. As in *Nelson*, the 1993 acknowledgment

11

form simply placed a duty on the employee to read and familiarize himself with the policies

contained in the handbook and did not notify Cochran either that the handbook contained an

arbitration clause or that his acceptance of the handbook constituted a waiver of his right to a

judicial forum.

Moreover, Brookwood's contention that a binding arbitration agreement has existed

since 1993 clashes with the plain language of the 1993 acknowledgment.  The form itself

insists that "no written statement or agreement in this handbook concerning employment is

binding."  2d Burrell Aff., Attach. B.  Drafted by Brookwood, the form clearly states

Brookwood's intent *not* to obligate itself to any of the policies contained within the handbook.

The court need not decide whether the handbook by itself would prove that an arbitration

agreement exists because the handbook and acknowledgment form (which is actually "Page 31"

of the handbook) must be taken together.[3]  *Compare with Kidd v. Equitable Life Assurance

Soc'y*, 32 F.3d 516 (11th Cir. 1994) (requiring arbitration where application form expressly

bound applicant to terms of employment manual).  In light of Brookwood's explicit disclaimer,

the court cannot unilaterally hold Cochran to the terms of the 1993 handbook because to do so

_____

[3]        The court recognizes that under Alabama contract law, an employee handbook
"may constitute a contract between the employer and the employee if (1) the language contained
in the handbook is specific enough to constitute an offer; (2) the offer is communicated to the
employee by issuance of the handbook, or otherwise, and, (3) the employee accepts the offer by
retaining employment after he has become generally aware of the offer."  *Davis v. University of
Montevallo*, 638 So.2d 754, 756-57 (Ala. 1994) (citing *Hoffman-LaRoche, Inc. v. Campbell*, 512
So.2d 725 (Ala. 1987).  Nevertheless, both the 1993 and 1996 handbooks in the present case
were accompanied by acknowledgment forms.  While the language in the handbooks may support
the inference that an agreement to arbitrate exists, the language of the 1993 form militates against
such a conclusion.

12

would contravene basic principles of contract law. Therefore, the court is of the opinion that no arbitration agreement was in effect at the beginning of Cochran's employment in 1993.

### 2.    *1996 Handbook & Acknowledgment Form*

Brookwood alleges that Cochran received a revised handbook and signed a new acknowledgment form in 1996. 2d Burrell Aff. at 2. The 1996 handbook contains substantially the same FTP as the 1993 handbook and emphasizes: *"Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company agrees to be bound by the FTP."* 2d Burrell Aff., Attach. C at 3 (page numbers correspond to the page numbers in the handbook) (italics in original). The effect of this "agreement" in the 1996 handbook turns upon the contents of the accompanying acknowledgment form.[4]

Brookwood can produce neither the original nor a copy of the form Cochran signed in 1996. Cochran admits to signing a form in March 1996 and does not specifically deny that it was a duplicate of the one he signed in 1997; he only asserts that the form was "similar" to the 1993 form but does not recall whether the form contained the word "arbitration." Cochran Aff. at 1. Brookwood claims that the 1996 form contained a mutual agreement "to submit to final and binding arbitration" as the "sole and exclusive remedy" of employment disputes. *See* 2d Burrell Aff., Attach. D (alleged duplicate of 1996 Acknowledgment Form). A conflict potentially arises because a form containing such language cannot be reasonably considered

---

[4]        As with the 1993 handbook, an acknowledgment form accompanied the 1996 handbook, thus limiting the conclusions that may be drawn from the handbook alone and requiring the court to consider both documents together. See note 3, *supra*.

13

"similar" to the 1993 form signed by Cochran which makes no mention of "arbitration." If Cochran signed a form in 1996 that was in fact similar to the 1993 form, then no agreement to arbitrate exists.

As stated above, the burden of proving the existence of a contract rests upon the party seeking to enforce it. *Beavers*, 674 So.2d at 1265. Because the 1993 acknowledgment form expressly disclaimed any creation of binding agreements by the handbook, Brookwood must show that the 1996 acknowledgment contains an unambiguous arbitration agreement that supersedes its previous disclaimer.

Only the convergence of three pieces of evidence save Brookwood's motion.[5] First, Cochran admits that he signed an acknowledgment form in 1996 that other employees signed as well. Second, Burrell attests that the form signed by Cochran in 1997 is a duplicate of the form signed by all Brookwood employees in March 1996. Third, the form signed by Cochran in 1997 contains an unambiguous arbitration agreement. (Because the 1997 form requires special consideration, its validity and probative value will be discussed below.) Therefore, the court concludes that the evidence presented supports the formation of an arbitration agreement in March 1996 between Brookwood and Cochran.

---

[5]     *Compare with Tilton v. Prudential-Bache Secs., Inc.*, No. 85 Civ. 8788, 1987 WL 4704 (S.D.N.Y. March 24, 1987). In *Tilton*, the court held that the party seeking to compel arbitration failed to meet its burden when neither party submitted the original or a copy of the document containing the arbitration clause. *Id.* at *1. The court expressly rejected the movant's argument that the arbitration clause was standard on all such agreements and refused to compel arbitration without evidence of the arbitration language. *Id.* Here, the absence of the original 1996 form is remedied by the arbitration language in the 1997 form along with Burrell's assertion that it is a duplicate of the 1996 form.

14

### 3. 1997 Acknowledgment Form

Brookwood has produced a copy of an acknowledgment form signed by Cochran on January 30, 1997, just seven days after Cochran filed his Complaint in the present action. 2d Burrell Aff., Attach. D. The form has a handwritten notation that an "original" was signed in March 1996 and contains printed language binding Cochran and Brookwood to "final and binding arbitration" for the resolution of employment disputes. *Id.* Cochran argues that he signed the form after being pulled out of the operating room by an agent of Brookwood who misrepresented the true nature of the form. Cochran Aff. at 1. Brookwood does not deny that these were the circumstances surrounding Cochran's 1997 signing.

While the court cannot reasonably accept Cochran's claims of ignorance,[6] his unrebutted account of how Brookwood procured his 1997 signature is deeply troubling. Had his 1997 signature formed the only evidence supporting the existence of an arbitration agreement, the court would be inclined to deny Brookwood's motion and find that Brookwood resorted to chicanery in procuring Cochran's signature because Cochran had in fact never signed an arbitration agreement. Notwithstanding Brookwood's conduct, the 1997 form does provide essential evidence, although not in the manner that Brookwood suggests.

The 1997 form's probative value lies in the content of its pre-printed language, *not* Cochran's signature. For all intents and purposes, neither Cochran's signature nor the

---

[6]     Cochran admits to having received both the 1993 and 1996 handbooks which explain Brookwood's FTP and arbitration policies. Irrespective of whether Cochran may or may not have agreed to be bound by the handbooks' policies, he certainly obligated himself to read and familiarize himself with the handbooks when he signed the acknowledgment forms. Thus, he should have known about the FTP and the meaning of the word "arbitration."

handwritten "acknowledgment" that an original was signed in 1996 has any relevance.
Burrell's assertion that the 1997 form is a "duplicate" of the form signed by all Brookwood
employees in 1996 and Cochran's admission that he signed a form in 1996 that all Brookwood
employees signed already provide the necessary proof of his signing a form in 1996. The
1997 form provides the "missing link," i.e., unambiguous language that binds the signee to
arbitration of employment disputes. Had Brookwood simply produced an unsigned form with
the necessary language and Burrell's affidavit verifying that it was the form signed by all
employees in 1996, this evidence along with Cochran's admission would have sufficed.[7]
Therefore, the court concludes that Brookwood has met its burden of proving that a valid
agreement to arbitrate was formed in 1996.

### C.    Scope of Arbitration

Cochran does not argue that the issues raised in his Complaint fall outside the scope of
arbitration under Brookwood's FTP. Instead, Cochran argues that the FAA excludes his
employee contract from its scope. Cochran Aff. ¶ 3 (citing 9 U.S.C. § 1). Section 1 states,
in relevant part, "but nothing herein contained shall apply to contracts of employment of
seamen, railroad employees, or any other class of workers engaged in foreign or interstate
commerce." 9 U.S.C. § 1. Cochran argues that he is engaged in interstate commerce because

---

[7]      Having determined that Cochran's signature on the 1997 form is of no
consequence, the Court need not specifically address Cochran's claim of fraud in the inducement.
Even if Cochran can prove that he was defrauded when he signed the 1997 form, this fraud
cannot negate the inference raised by his own admission of signing a form in 1996, the arbitration
language of the 1997 form, and Burrell's affidavit that the 1996 form contained the same language
as the 1997 form.

16

Brookwood has asserted that it is engaged in interstate commerce, Pl.'s Br. at 8 (citing Def.'s Mem. at 5), and, therefore, the FAA does not apply to his contract with Brookwood.

Neither the Supreme Court nor the Eleventh Circuit has decided the proper scope of the § 1 exclusion. *See Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747-48 & 748 n.2 (5th Cir. 1996) (noting that the Supreme Court refused to decide the issue in *Gilmer* and listing the circuit courts that have addressed the issue). The question is whether or not the "catch-all" phrase "or any other class of workers engaged in foreign or interstate commerce" is to be read broadly or narrowly. Cochran suggests a broad reading of § 1 that would exclude most contracts pertaining to employment. The court is of the opinion that the exclusion should be read narrowly.

The majority of circuits that have addressed the scope of the § 1 exclusion have concluded that it should be read narrowly to only apply to employees that are engaged in activities directly related to interstate commerce, such as transportation. *See id.* at 748. Cochran's construction of the language would have it be read, "all contracts of employment." Such a reading, however, would make the specific enumeration of "seamen and railroad employees" meaningless. *See id.* (citation omitted). If Congress had intended the exclusion to apply to all contracts of employment, it could have said just that--e.g., "nothing herein contained shall apply to any contracts of employment." *See id.* Congress did not do so. Thus, the court is of the opinion that the clause should be read narrowly to give the entire clause meaning and to comport with the intent of Congress. This decision is consistent with the conclusions of the First, Second, Third, Fifth, Sixth, Seventh and District of Columbia Circuits. *See Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir. 1971); *Erving v. Virginia*

17

*Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972); *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., Local 437*, 207 F.2d 450, 452-53 (3d Cir. 1953); *Rojas*, 87 F.3d at 748; *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-01 (6th Cir. 1995); *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO*, 739 F.2d 1159, 1162 (7th Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1470-71 (D.C. Cir. 1997). Therefore, the court concludes that the contracts at issue are not excluded from the provisions of the FAA.

### D.    Waiver of Arbitration Rights

Cochran claims that over the course of two years he had lodged his complaints concerning discriminatory behavior with several members of Brookwood's management and administrative staff. Pl.'s Br. at 15-16. Allegedly, no one informed him of the FTP. *Id.* In addition, Cochran claims that he was deposed and had to provide a sworn statement without mention of the FTP. *Id.* at 16. Brookwood does not deny Cochran's allegations.[8] Cochran contends that Brookwood's two-year conduct constitutes a waiver of its right to arbitration. *Id.*

Again, the unrebutted allegations concerning Brookwood's conduct are disturbing. All the printed policies in Brookwood's handbooks have little credibility if, in fact, an employee's repeated claims of racial discrimination can be neglected for two years. Of course, Brookwood is in the *legal* right, as discussed below; nevertheless, the court must underscore

---

[8]        Instead, Brookwood lamely responds that Cochran "knew or should have known that he had the right to file a grievance and pursue arbitration. He cannot blame his employer for his own failure to exercise these rights." Def.'s Resp. at 7.

that a complaint of racial discrimination is *always* a serious matter. Brookwood's alleged conduct can only fuel the skepticism surrounding the use of arbitration to resolve employment discrimination disputes. If Cochran's claims are indeed true, then Brookwood needs to radically reform its behavior and conform to its own stated policies. Otherwise, Brookwood can only expect to incur further costs, both its own and the public's, by facing disputes such as the present action.

Despite Brookwood's ineptitude in enforcing its own FTP, Cochran's waiver argument fails because he does not provide an adequate legal basis. To support his position, Cochran cites *St. Mary's Med. Ctr. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585 (7th Cir. 1992). *Disco Aluminum* is distinguishable from the present case. In *Disco Aluminum*, a medical center sued its construction contractor for breach of contract. *Id.* at 586-87. The court held that the contractor had waived its right to arbitrate because it had allowed the litigation to proceed for almost two years before asserting its right to arbitrate for the first time. *Id.* at 589-91. In the present case, Brookwood promptly asserted its right to arbitrate by filing its Alternative Motion to Dismiss on February 18, 1997, less than one month after Cochran filed his complaint. Based on the foregoing, the court must conclude that no legal basis exists for finding that Brookwood's conduct, if true, would constitute a waiver of its right to arbitration.

### E.     Ambiguity & Interpretation of Brookwood's FTP

Cochran contends that alleged ambiguities in the FTP language make it "clear" that "the FTP is not mandatory and is not unilaterally enforceable." The court finds nothing ambiguous with respect to the FTP's mandate that all employees submit their disputes exclusively to the

19

FTP.  The 1996 handbook states that the "FTP applies to all employees . . . and covers all disputes" concerning an employee's employment, including Title VII claims.  2d Burrell Aff., Attach. C at 3. The 1997 acknowledgment form specifies, "I hereby voluntarily agree to use the [FTP] and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment . . . .  I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim . . . ."  *Id.* at Attach. D.  Given this plain and comprehensive language, the court concludes that the language of the FTP unambiguously binds Cochran to mandatory arbitration of his dispute.

### F.     Public Policy Considerations

Finally, Cochran contends that the FTP is "void as against public policy" because he is deprived of counsel in the first four steps of the grievance process.  *See* Pl.'s Br. at 19-20. Cochran does not, however, dispute that the first four steps of the FTP are not binding. Furthermore, at the final arbitration stage, Brookwood employees are fully entitled to legal representation.  2d Burrell Aff., Attach. C at 10-11.  Therefore, the court concludes that the public policy arguments advanced by Cochran do not justify a stay of arbitration.

### III. CONCLUSION

Given the existence of a valid arbitration agreement between defendant Brookwood and plaintiff Cochran, the court is of the opinion that defendant's Alternative Motion to Dismiss is due to be granted and plaintiff's Motion to Stay Arbitration is due to be denied.  Therefore,

20

the present action will be dismissed without prejudice.  An Order in accordance with this

Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th day of September, 1997.

**SHARON LOVELACE BLACKBURN**
United States District Judge